INHABITANTS OF WATERVILLE *vs.* INHABITANTS OF BENTON.
SAME *vs.* INHABITANTS OF FAIRFIELD.

Kennebec.    Opinion November 17, 1892.

*Pauper. Non compos. R.' S., c. 24, § 1, par. 2, par. 6.*

The circumstance that a pauper is *non compos mentis* does not necessarily prevent the operation of rule 6 of the pauper statute.

If an intent is necessary to fix a pauper's home in another town upon a change of residence, such intent may be supplied by his surviving parent and natural guardian having the care and control of the child.

A pauper who was *non compos mentis* from birth, after coming of age and after her father's death resided for five consecutive years in the family and under the care of her mother in the town of Benton without receiving supplies. *Held* ; That under R. S., c. 24, § 1, par. 6, her settlement had been established in that town.

AGREED STATEMENT.

*Webb, Johnson and Webb*, for plaintiffs.
*George G. Weeks*, for Fairfield.
*Heath and Tuell*, for Benton.

EMERY, J. The only question mooted in these actions for pauper supplies is whether the settlement of the pauper is in Fairfield or Benton. The material facts may be stated as follows :

The pauper, Emma Goodwin, was *non compos mentis* from birth. At the time of her birth in 1850, her father resided and had his pauper settlement in Fairfield. She lived in Fairfield with her father until his death when she was eight years old. She continued to live in Fairfield for some years of her minority with her mother. While the pauper was yet a minor, her mother removed to Vassalborough keeping the pauper with her in her family, and in Vassalborough the pauper came of age. In 1874, the mother removed to Benton, still keeping the pauper with her, and there married Mr. Randlett whose pauper settlement was in Benton. The pauper lived with her mother in Mr. Randlett's family in Benton until some time in 1882, more than five consecutive years and without receiving pauper supplies. In 1882, the mother was divorced from Mr. Randlett, and neither she, nor her daughter, the pauper, have since resided in any other town for five consecutive years. The pauper from the death of her father was entirely dependent upon her mother, and was under her care and control until the death of her mother in 1885.

By virtue of R. S., c. 24, § 1, par. 2, the settlement of the pauper at the time she became of age was in Fairfield, that being the settlement of her father at the time of his death. It is urged that by the same section and paragraph her settlement must continue to be in Fairfield since she became of age and wherever she may have lived, because though of age she has, by reason of her idiocy, no capacity to acquire another settlement. The argument is that mental capacity to form or have an intention as to residence, is made by § 1, par. 2, essential to the acquisition of another settlement than that of the deceased father.

But par. VI of the same section explicitly declares that "a person of age having his home in a town for five successive

years without receiving pauper supplies directly or indirectly, has a settlement therein." This pauper was "a person of age," and she had "her home in Benton for five successive years without receiving pauper supplies directly or indirectly." There is no statement in this par. VI that the person of age so having his home must be of sound mind, or have any mental capacity in order to acquire a settlement. It has also been repeatedly held in a series of judicial decisions in this State, that such mental capacity is not necessary, that a person *non compos mentis*, if of age, can acquire a new pauper settlement under par. VI. *Lubec* v. *Eastport*, 3 Maine, 220 ; *Augusta* v. *Turner*, 24 Maine, 112 ; *New Vineyard* v. *Harpswell*, 33 Maine, 193 ; *Gardiner* v. *Farmington* ; 45 Maine, 537 ; *Auburn* v. *Hebron*, 48 Maine, 432 ; *Corinth* v. *Bradley*, 51 Maine, 540. The degree of mental unsoundness was not considered in any of the cases cited, and in some of them the pauper was absolutely *non compos*, utterly without mind. The rule that such a person of age can acquire a new pauper settlement under par. VI is thus firmly established in this State.

The act of placing the *non compos* pauper in the town,— the fixing his home there and the keeping it there, may be done by the individual having the care of the pauper's person. In *Lubec* v. *Eastport*, it was done by an uncle ; in *Augusta* v. *Turner*, by the mother ; in *New Vineyard* v. *Harpswell*, by a brother ; in *Gardiner* v. *Farmingdale*, by a brother and sister ; in *Auburn* v. *Hebron*, by the guardian. A *non compos* pauper thus intentionally placed to live, and kept living in a town for five successive years, may be properly said to have his home in that town for that time. In matters of domicil outside of the pauper statute, " the domicil of an idiot may be changed by the direction or assent of his guardian express or implied." Wilde, J., in *Holyoke* v. *Haskins*, 5 Pick. 26.

The question of the degree of the mental capacity of a pauper has only arisen in cases where it was sought to determine whether an adult pauper was emancipated, or was still under his living father's control,— whether the adult pauper had sufficient mental capacity to fix his own home independent of his father's

will, or had his home fixed for him by his father. Such was the issue in *Fayette* v. *Chesterville*, 77 Maine, 28, and kindred cases. Where the father is dead, as here, or had abandoned his family, as in *Augusta* v. *Turner*, *supra*, no such question can arise.

It is again urged, however, that the pauper in this case being *non compos* passed under the control of the mother after the father's death, and so continued unemancipated though of age, and hence incapable of acquiring another settlement than that of her deceased father. It must be clear, however, in the light of the principles above stated that the question of emancipation is immaterial. The father is dead. The daughter was thus emancipated from him. The mother succeeded to his care and control of the daughter's person. She intentionally fixed and made the daughter's residence and home with herself in Benton. That home continued in Benton in accordance with that intention for five successive years without any pauper supplies being received directly or indirectly. The daughter being of age thus acquired a pauper settlement in Benton under par. VI. It was so held in *Augusta* v. *Turner*, *supra*, where the father was still living but had abandoned the daughter.

In *Waterville* v. *Benton*, *Defendant defaulted*.
In *Waterville* v. *Fairfield*, *Plaintiff nonsuit*.

WALTON, VIRGIN, LIBBEY, FOSTER and HASKELL, JJ., concurred.